UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWIN T. LINDELL, II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Case No. 4:20-cv-1431-SPM |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Edwin T. Lindell, II ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL BACKGROUND

In March 2018, Plaintiff applied for DIB and SSI, alleging that he had been unable to work since April 20, 2017, due to depression, anxiety, migraines, diabetes, high blood pressure, arthritis, fibromyalgia, post-traumatic stress disorder, and bipolar (disorder). (Tr. 64, 77, 214). His applications were initially denied. (Tr. 89-96). On July 25, 2018, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 97-99). After a hearing, the ALJ issued an unfavorable decision on August 1, 2019. (Tr. 10-23). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council on October 4, 2019 (Tr. 161-63), but the Appeals Council declined to review the case on July 31, 2020. (Tr. 1-3). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II. FACTUAL BACKGROUND[2]

At the July 2019 hearing before the ALJ, Plaintiff testified as follows. Plaintiff testified that he is married and has one child. (Tr. 43). His wife works and he is at home taking care of his child. (Tr. 43). He does not drive a car and never has because of his anxiety disorder. (Tr. 43). He stated that he either walks, gets rides from other people, or can take public transportation. (Tr. 43-44). Plaintiff testified about his work history, and that at his last job he had a mental breakdown and was ultimately fired for not being able to make his quotas. (Tr. 45-46). In 2018, he was briefly a custodian but had to quit because he could not handle the job. (Tr. 46). As for his medical ailments, Plaintiff stated that his general practitioner currently handles all his medical issues, and he is on two different medications for depression. (Tr. 47). He is not seeing any specialists because

---

[2]  Because Plaintiff's arguments are related to his mental impairments, the Court focuses primarily on facts relevant to those impairments.

2

there are waiting lists, but he did see a social worker at least four times. (Tr. 48). He is not seeing a psychiatrist and his family doctor is managing his medications. (Tr. 48). Plaintiff indicated that he did see a neurologist, but that visit mostly dealt with his migraines. (Tr. 48).

With regard to Plaintiff's medical and vocational records, the Court accepts the facts as set forth in the parties' statements of facts and responses. The Court will cite to specific records as necessary to address the parties' arguments.

### III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner

3

determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which is "the most [a claimant] can do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant

cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

**IV.    THE ALJ'S DECISION**

Here, the ALJ applied the five-step analysis. (Tr. 13-23). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 20, 2017, the alleged onset date. (Tr. 13). At step two, the ALJ found that Plaintiff had the severe impairment(s) of obesity, fibromyalgia, and hypertension. (Tr. 13). The ALJ also found two medically determinable mental impairments: depression and anxiety. (Tr. 14). The ALJ analyzed the four areas of mental functioning known as "paragraph B" criteria—understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself—and found the impairments were non-severe because, considered singly and in combination, they did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. (Tr. 14-17). The ALJ noted that the limitations identified in the

5

"paragraph B" criteria were not an RFC assessment but were used to rate the severity of mental impairments at steps two and three. (Tr. 17).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 17).  The ALJ found that Plaintiff had the following RFC: "[Plaintiff can] perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except [Plaintiff] can climb, balance, stoop, kneel, crouch, and crawl occasionally. He must avoid even moderate exposure to hazards such as dangerous equipment or machinery." (Tr. 18). Moving to step four, the ALJ found that Plaintiff could perform past relevant work as a data entry clerk, customer service representative, and telephone solicitor as these jobs do not require performance of work-related activities precluded by his RFC. (Tr. 21). Although the ALJ found Plaintiff could perform his past relevant work, the ALJ found (alternatively) at step five that there are other jobs existing in the national economy that Plaintiff could also perform. (Tr. 22). However, the ALJ failed to specifically identify what other jobs Plaintiff could perform in the decision. (Tr. 22-23).

## V.    DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed because "[t]he ALJ failed to sufficiently consider Plaintiff's mental impairments." (Doc. 24 at 3). More specifically, Plaintiff argues that "the ALJ erred in failing to find that Plaintiff's depression and anxiety were severe impairments[.]" (*Id.*). Plaintiff also contends the ALJ erred in failing to incorporate any limitations into the RFC relating to these mental impairments. (*Id.*). Plaintiff supports these arguments by pointing to the fact that the ALJ found Plaintiff had "mild limitations" in all four areas of mental functioning, which Plaintiff contends is different than finding no mental limitations. (*Id.* at 5).

6

Finally, Plaintiff states that the ALJ erroneously failed to specifically address his inability to drive. (*Id.* at 3).

Responding, the Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff's mental limitations were non-severe. (Doc. 28 at 3-6). The Commissioner further contends that even if the ALJ erred by failing to include mental restrictions in the RFC, this error would be harmless. (*Id.* at 7).

### A.   Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations

7

regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. Analysis

The ALJ's finding that Plaintiff's depression and anxiety are non-severe was supported by substantial evidence. Plaintiff's medical records support the ALJ's findings. Several examinations indicate that Plaintiff's psychiatric portions of his physical examinations appeared largely normal, aside from a few notes indicating that he had poor insight. (Tr. 299, 303, 310, 317, 371, 427, 522, 672, 722, 727, 780, 789). Additionally, Plaintiff typically denied anxiety and/or depressed mood at his medical appointments, which included visits only a couple months before his hearing before the ALJ. (Tr. 303, 318, 370, 426, 499, 780, 788). Further, his medical records reflect that his depression was diagnosed as mild at times or noted as "no active issue". (Tr. 300, 546). While some medical records did note in the "Assessments" portion that his depression was "moderate" and his anxiety and depression "[n]eeds improvement" (Tr. 303, 315, 317, 324), the ALJ's determination that Plaintiff's anxiety and depression were non-severe, given the record as a whole, was within the zone of choices available to the ALJ.

The ALJ's RFC finding at step 4 is also supported by substantial evidence even though, as Plaintiff contends, the ALJ failed to include any of the "mild" mental limitations found at step 2. *Kelly T. v. Kijakazi*, No. 20-CV-1915 (WMW/DTS), 2022 WL 507609, at *4 (D. Minn. Jan. 26, 2022), is instructive. In *Kelly,* the ALJ found, at step 2, that the plaintiff's depression and anxiety

8

caused mild limitations in her ability to perform basic mental work activities. *Id.* In determining the plaintiff's RFC, the ALJ in *Kelly* found opinion evidence of agency doctors persuasive that the plaintiff's depression and anxiety did not impose any significant limitations and, ultimately, did not include mental limitations in the RFC. *Id.* The *Kelly* court affirmed the ALJ's decision holding that "[t]he fact that the ALJ concluded for purposes of step two that [the plaintiff]'s mental impairments were [']mild['] and not [']none['] does not mean that an RFC *must* include mental functioning limitations." *Id.* (emphasis in original)). "Rather, when mental impairments are not severe, they still must be evaluated for purposes of steps four and five and the ALJ must make an assessment of [a c]laimant's mental impairment in the context of determining an appropriate RFC." *Id.* The *Kelly* court concluded that "[t]he ALJ's findings in step two can be harmonized with the ALJ's analysis in step four as the ALJ found mild limitations in step two and considered those limitations in step four, ultimately determining [the c]laimant retained the ability to perform work within the parameters of the RFC." *Id.*

As in *Kelly,* the ALJ's step 2 findings in this case can be harmonized with the RFC even though the RFC did not include mental limitations. Like the ALJ in *Kelly*, the ALJ in this case considered Plaintiff's mental impairments in determining an appropriate RFC. (Tr. 20, 21). However, the ALJ found Dr. Brandhorst's assessment that Plaintiff had no "paragraph B" criteria limitations persuasive. The ALJ also found that Dr. Brandhorts's opinion was consistent with the fully developed record available at the time of the hearing, including evidence that Plaintiff had started taking medication for his mental health. (Tr. 21). In sum, because the ALJ considered Plaintiff's mild mental health limitations in determining the RFC and because the record as a whole supports the RFC, the ALJ did not err in omitting mild mental limitations from the RFC. *See Kelly*, 2022 WL 507609, at *4.

9

Finally, Plaintiff argues that the ALJ did not discuss his inability to drive because of his anxiety and this "would certainly constitute a significant limitation" on his ability to maintain employment. (Doc. 24 at 3-4). However, the record reflects the ALJ considered this limitation. The ALJ specifically noted that Plaintiff "testified that he is able to walk, bicycle, or use public transportation." (Tr. 15, 16). Thus, the ALJ clearly considered Plaintiff's testimony about driving, but was not persuaded that it warranted including additional limitations in the RFC.

VI. **CONCLUSION**

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of March, 2022.